UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

2089 RIGGS ROAD REAL ESTATE,
LLC; *et al.*,

          Plaintiffs,

v.

VESSL, INC., *et al.*,

          Defendants.
_____/

Case No.: 23-11340
Honorable Gershwin A. Drain

**<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [#14]; CANCELLING HEARING; TRANSFERRING ACTION TO THE DISTRICT OF ARIZONA PURSUANT TO 28 U.S.C. § 1631 AND CLOSING CASE</u>**

## I.  INTRODUCTION

Plaintiffs 2089 Riggs Road Real Estate, LLC (Riggs Road), KZDR Investments, LLC (KZDR), Blue Indian, LLC (Blue Indian), EG Mich, LLC (EG), and Vessl Investment Group of Michigan, LLC (Vessl Investment) brought the instant action after out-of-state Defendants Virdi, LLC (Virdi) and Vessl, LLC (Vessl) allegedly failed to manufacture custom equipment so that Plaintiffs could produce and sell Virdi's brand of cannabis products in Michigan. Both Vessl and Virdi are Delaware limited liability companies with their principal places of business in Arizona. Plaintiffs bring breach of contract (Count I), fraud in the inducement (Count II), fraud (Count III), and unjust enrichment (Count IV) claims.

Now before the Court is the Defendants' Motion to Dismiss, filed on August 24, 2023.  Plaintiffs filed their Response opposing Defendants' present motion on September 14, 2023, and Defendants filed their Reply in support of their motion on September 28, 2023. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter.  Accordingly, the Court will resolve the pending motion on the briefs and cancels the hearing scheduled for December 18, 2023  *See* E.D. Mich. L.R. 71.(f)(2).  For the reasons that follow, the Court grants in part and denies in part Defendants' Motion to Dismiss and transfers this action to the United States District Court for the District of Arizona, which has general jurisdiction over these Defendants and where the action could have originally been brought.

## II.     FACTUAL BACKGROUND

The genesis of the instant dispute began in late 2017, when Paul Ogburn of third-party OGZ Holdings, LLC (OGZ) sought to make Blue Indian a distributor of Virdi's cannabis products.  Defendant Vessl is the patent owner of the Vessl® dosing and delivery device, which is a bottle cap that stores concentrated ingredients in a pressurized closure device.  Defendant Vessl offers customized equipment to use its Vessl® technology.  Defendant Virdi contracted with Vessl to have the exclusive right to distribute the Vessl technology for applications such as THC beverages and other specialty medicinal and CBD beverages.  Virdi created

Kalvara, a brand name cannabis product that uses the Vessl® technology.  In January of 2018, OGZ and Virdi entered into an agreement whereby Virdi would compensate OGZ if an OGZ client became a distributor for Virdi based on OGZ's introduction.

In February of 2018, OGZ introduced Plaintiff Blue Indian's Principal, Parish Shah, to Walter Apodaca of Vessl and Virdi because Shah was interested in becoming a distributor for Virdi in Michigan.  After this initial virtual meeting, Ogburn negotiated the terms of a letter of intent for Shah to enter into a distribution agreement that would give Blue Indian distribution rights for Kalvara products in Michigan.  Blue Indian paid a $75,000.00 deposit pursuant to the letter of intent.

On March 23, 2018, Virdi provided a formal quote for custom equipment to Blue Indian that would allow it to produce Kalvara products for Michigan cannabis dispensaries.  Pursuant to the quote, Shah was to coordinate sales and marketing, and Plaintiffs Riggs Road, KZDR, EG Mich, and Vessl Investment would provide capital, obtain necessary licenses, and manage manufacturing and distribution.  The equipment was to be delivered to Canada.

In connection with the equipment purchase, Riggs Road purchased commercial real property in Warren, Michigan that was zoned specifically for cannabis businesses.  Plaintiffs intended to use a portion of the building to process cannabis distillate and process and package Kalvara products for sale to licensed

dispensaries and retailers in Michigan. Meanwhile, EG Mich applied to the State of Michigan for a cannabis-processing license so that Plaintiffs could manufacture and sell Kalvara and white label products to dispensaries and retailers in Michigan. Plaintiffs allege that Defendants represented to Plaintiffs that the wholesale margins for Kalvara distributors was 151%.

The original quote for the custom equipment was for $192,259.50. By September of 2018, Apodaca represented that Virdi had started work on some of the equipment and indicated that Plaintiffs would need to make payment towards labor and parts costs already incurred. On September 20, 2018, Virdi invoiced EG Mich for $29,922.12 to purchase the specialized equipment. Plaintiffs paid this invoice on December 7, 2018.

Thereafter, Plaintiffs paid another $25,000.00 to Virdi on December 20, 2018. On February 20, 2019, Virdi sent another invoice for $62,337.38 for a machine filling equipment package. At that time, a representative of Vessl summarized Plaintiffs' payments in an email purportedly incorrectly claiming Plaintiffs had paid $150,000.00 towards the equipment. At this point, Plaintiffs claim they had actually paid $279,992.00 toward the purchase of the custom equipment. On April 26, 2019, KZDR paid another $75,000.00 to Virdi, even though the Plaintiffs had yet to receive any of the equipment or other benefits promised in the equipment proposal and/or letter of intent.

4

Plaintiffs also allege that Defendants later enticed Plaintiffs to make a large capital investment into Vessl by representing that such an investment would hasten delivery of the equipment to Canada and would allow for a discounted licensing fee. As a result of these representations, Vessl Investment contributed $405,000.00 to Defendant Vessl and acquired 1,576,300 shares in the Vessl company in October of 2018.

In January of 2021, Plaintiffs argue that, contrary to the express representations of Defendants, Defendants claimed the equipment costs had risen to $457,000.00. They also maintained, contrary to earlier representations, that the wholesale margins for Kalvara products were 51% rather than 151%.

To date, Plaintiffs have not received any equipment, product, license rights, or any other benefit from Defendants. Plaintiffs assert that Defendants have not even begun production of the custom equipment and are incapable of producing it as promised. On May 23, 2023, Plaintiffs offered to tender back to Defendants all "benefits" received. Plaintiffs argue that Defendants induced them to enter into contracts through fraud; thus, rescission of the parties' agreements is warranted.

Conversely, Defendants assert that the letter of intent was merely an agreement to negotiate and to determine if the parties could agree on terms for a distribution agreement in Michigan. Because the parties could not agree, a distributorship agreement was never executed. Defendants further argue that Blue

Indian failed to make full payment for the custom equipment, thus, it was never delivered to Canada as anticipated by the initial quote.

### III. LAW & ANALYSIS

#### A. Personal Jurisdiction – Standard of Review

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). In the face of a motion to dismiss pursuant to Rule 12(b)(2), the plaintiffs "may not stand on [their] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *GM L.L.C. v. Autel.US Inc.*, No. 14-14864, 2016 U.S. Dist. LEXIS 40902, at *7 (E.D. Mich. Mar. 29, 2016) (internal citation and quotation marks omitted); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

If the court decides the motion on the affidavits, "Plaintiff[s] must make only a *prima facie* showing of personal jurisdiction in order to defeat dismissal." *Id*. Plaintiffs can meet their burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. Jul. 21, 2014).

If a defendant does not perform continuous business in a forum, the defendant may still be subject to personal jurisdiction in a forum state based on claims that "arise out of or relate to" a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414–415 (1984); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989), cert. denied, 493 U.S. 1058, (1990). In order to determine whether personal jurisdiction exists, a district court typically engages in a two-step inquiry analyzing whether the forum's long-arm statute and the Due Process Clause permit the exercise of personal jurisdiction. *See Bird v. Parsons*, 289 F.3d 865, 871(6th Cir. 2002); *see also Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989) (the federal court must "look to the law of the forum state to determine the district court's 'in personam jurisdictional reach.'" (quoting *So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 375 n.2 (6th Cir. 1968)).

In this case, Michigan's long-arm "statute confers on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment," *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), cert. denied, 454 U.S. 893 (1981), thus, "the two [jurisdictional] inquiries merge and the Court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1988) (internal quotation marks

and citation omitted); *see also Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2005)*; Zellerino v. Roosen*, 118 F. Supp. 3d 946, 950 (E.D. Mich. 2015)("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one.")(citations omitted).

Therefore, resolution of Defendants' present motion turns on whether exercise of personal jurisdiction comports with their federal due process rights. *Lifestyle Lift Holdings, Inc. v. Prendiville*, 768 F. Supp.2d 929 (E.D. Mich. 2011) (citing *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150 (6th Cir. 1990); *Bridgeport Music, Inc. v. Still N the Water Pub*, 327 F.3d 472, 477 (6th Cir. 2003)).

Due process requires the following in order for a court to exercise personal jurisdiction over a nonresident defendant: (1) the defendant must purposefully avail herself of the privilege of acting in the forum state or causing a consequence to occur there; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *See So. Machine Co.*, 401 F.2d at 381. In order to comply with due process, "out-of-state defendants" must "have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair

8

play and substantial justice.'" *Blessing v. Chandrasekhar*,__ F.3d __, 2021 U.S. App. LEXIS 5222, *29 (6th Cir. Feb. 23, 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Supreme Court has cautioned that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). A Drug Enforcement Agent could not be haled into a Nevada court after he seized funds from Nevada residents at a Georgia airport, even though he knew their home state and it was foreseeable they might suffer harm there. *Id*. at 288-91 (holding the "[p]etitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at respondents whom he knew had Nevada connections.") *Id.* at 289. The *Walden* court explained "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

### B. General Jurisdiction

The State of Michigan has no general jurisdiction over Vessl or Virdi as neither operates in Michigan. Plaintiffs, citing *McIntyre's Mini Computer Sales Grp., v. Create Synergy Corp.,* 644 F. Supp. 580 (E.D. Mich. 1986), argue that Vessl and Virdi have conducted sufficient business within the State of Michigan and maintain the Court should find that there is general jurisdiction over both

Defendants. However, *McIntyre* provides no support for Plaintiffs. In *McIntyre*, two percent of the defendant's business revenues were from the State of Michigan. Here, neither Vessl or Virdi have any revenue from the state of Michigan. Moreover, neither Vessl nor Virdi sells or distributes any products in the State of Michigan. *Id.* In its Response, Plaintiffs point to Vessl's 2023 Investor Business Update, which references third parties in several states, including Michigan, using the Vessl closure system in their manufacturing processes, to argue that Vessl does business in Michigan. However, Vessl does not sell or deliver its closure system to Michigan. Rather, in this particular case, Vessl sells its closure system to its customer that takes delivery of the Vessl closure in Canada. The customer arranges for the shipment of the products to Michigan for use in its manufacturing process. *Id.* Although the Vessl closure system may be used in a manufacturing facility in Michigan, it is not sold or shipped there by Vessl.

### C. Limited Jurisdiction

Plaintiffs have also failed to demonstrate with a *prima facie* showing that the Court has limited personal jurisdiction over the Defendants. In this case, VIG, through its member, Mark Lewis, solicited information regarding the investment in Vessl. Mr. Lewis sought the opportunity to invest in Vessl, and he requested that the third-party company, OGZ, set up the presentation for him. Vessl merely agreed to provide Mr. Lewis with the investment opportunity he sought, which,

according to Plaintiffs, was funded by VIG on October 17, 2018. Vessl is an out of state entity that does not sell any products in Michigan, and since the investment was a result of VIG seeking out an investment in Vessl, there is no basis for stating that Vessl availed itself to the laws of Michigan such that it could be considered to have minimum contacts with the State of Michigan.

Plaintiffs argue that Virdi availed itself to the laws of Michigan, primarily due to the conduct of Paul Ogburn, who, according to Plaintiffs, was the "Michigan Kalvara representative" for Verdi. However, Ogburn worked for an independent company, OGZ, which was paid a commission by Virdi when an OGZ client became a distributor of Virdi. Ogburn was involved in negotiations between Virdi and Blue Indian because he was trying to close a distributorship agreement between his client, Blue Indian, and Virdi so that his company, OGZ, could profit from the same.

Plaintiffs argue that because Ogburn forwarded a Virdi invoice to Blue Indian, from a kalvara.com e-mail address, this proves that Ogburn was working for Verdi. However, a closer look at the e-mail reveals that Ogburn, in his signature block, states that he is working for OGZ and is the Managing Partner and Founder of that company. Indeed, in all of Ogburn's e-mails, he clearly identifies himself as an employee of OGZ Holdings, and there is no reference to him working for Virdi or Vessl.

OGZ, through Ogburn, found and introduced Blue Indian, through its initial member and founder, Shah, to Virdi. Any conduct or actions of OGZ, as related to Plaintiffs, cannot be imputed to Virdi for purposes of creating minimum contacts with the State of Michigan. *Red Wing Shoe Company v. Hockerson-Halberstadt*, 148 F.3d 1355, citing *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985) (finding that contacts resulting from the activity of a third party are not attributable to a defendant for purposes of establishing minimum contacts with a state).

With regard to in-person meetings between the Defendants and Blue Indian, Plaintiffs admit that the only face-to-face meeting between the parties took place in Las Vegas, and not in Michigan. And as for phone calls and virtual meetings that took place during the negotiation for a distributorship agreement, those meetings are not sufficient to create minimum contacts for Virdi with the State of Michigan. *LAK, Inc., v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) (finding that "a numerical count of the calls and letters has no talismanic significance" to creating minimum contacts for purposes of personal jurisdiction.) Here, that is especially true as most of the communications complained of by Plaintiffs were as a result of inquiries initiated by Plaintiffs. Moreover, those phone calls and virtual meetings never led to the signing of a distribution agreement between Virdi and Blue Indian.

With respect to the equipment at issue, Virdi and Blue Indian entered into a binding Equipment Agreement that contemplated payment by Blue Indian, for an agreed upon price, with Virdi delivering the equipment to Canada. Plaintiffs argue that payments made on the equipment constitutes Virdi doing business in Michigan, and create minimum contacts for Virdi in the State of Michigan, as Virdi knew the equipment would ultimately "be used by Plaintiffs in Michigan." However, that is not the test for minimum contacts under Michigan's long arm statute. Under Michigan's long arm statute, minimum contacts is only created if "materials [are] to be furnished in the state [of Michigan] by the defendant." MCL 600.705(5); *see also World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286 (1980). Moreover, it is well settled that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). (holding the "[p]etitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at respondents whom he knew had Nevada connections.") *Id.* at 289. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Since the equipment was going to be delivered to Canada, partial payments made under the Equipment Agreement cannot create minimum contacts for Virdi in Michigan.

### D. Transfer

When a district court lacks personal jurisdiction over a defendant, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." *Roberts v. Paulin*, No. 07-CV-13207, 2007 U.S. Dist. LEXIS 80490, *20-21 (E.D. Mich. Oct. 31, 2007) (quoting 28 U.S.C. § 1631 and citing *Roman v. Ashcroft*, 340 F.3d 314, 328-29 (6th Cir. 2003)). Section 1406(a) also permits transfer when the interest of justice supports the transfer despite the fact that "the court in which it was filed had [no] personal jurisdiction over the defendants[.]") *Id*. at *21 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).

It is within the sound discretion of the district court "whether to transfer 'in the interest of justice' or to dismiss the case[.]." *Id.* (quoting *Audi AG & Volkswagon of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)). "Unless evidence exists that the case was brought in the improper venue in bad faith or to harass the defendant, the interest of justice generally requires a transfer rather than a dismissal." *Id*. at *22 (citing *De La Fuente v. ICC*, 451 F. Supp. 867, 872 (N.D. Ill. 1978)); *see also Roberts v. Paulin*, No. 07-CV-13207, 2007 U.S. Dist. LEXIS 80490, at *21-22 (E.D. Mich. Oct. 31, 2007) (noting that in the absence of evidence of bad faith or harassment of the defendant, "the interest of

14

justice generally requires a transfer rather than a dismissal."). "A transfer is favored over a dismissal because a transfer facilitates the adjudication of a dispute on the merits." *Roberts*, 2007 U.S. Dist. LEXIS 80490, *21 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).

Here, the Court will transfer the case to the federal district court in Arizona pursuant to 28 U.S.C. § 1631. The record is devoid of any evidence that Plaintiffs acted in bad faith by bringing this action in an improper forum in order to increase the litigation costs for Defendants. Additionally, Plaintiffs will be prejudiced if they are denied their day in court. There is no question that the district court in Arizona has jurisdiction over these Defendants because their principal place of business is in that district.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendants' Motion to Dismiss [#14] is GRANTED IN PART and DENIED IN PART. This Court lacks personal jurisdiction over Defendants in connection with Plaintiffs' claims and the United States District Court for the District of Arizona may exercise general jurisdiction over these Defendants.

This case is TRANSFERRED to the United States District Court for the District of Arizona.

SO ORDERED.

Dated:  December 13, 2023               /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys on
December 13, 2023, by electronic and/or ordinary mail.
/s/ Aaron Flanigan for Teresa McGovern
Case Manager